**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **BENITO BALDERRAMA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-169-KC** |
| | § | |
| **PRIDE INDUSTRIES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

On this day, the Court considered Defendant's Motion to Dismiss, ECF No. 2, in the above-captioned case. As explained below, Plaintiff's statutory claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA") and the Texas Labor Code are sufficiently alleged to withstand Defendant's Motion to Dismiss. Defendant's Motion is therefore denied as to these claims. Defendant's Motion must be granted, however, with respect to Plaintiff's claims of negligence, gross negligence, and negligent investigation. Finally, Defendant's request for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure is granted with respect to Plaintiff's claims of intrusion upon seclusion, intentional infliction of emotional distress ("IIED"), wrongful termination, and negligent hiring. For these reasons, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## I.      BACKGROUND

Plaintiff filed a Petition in El Paso County Court at Law No. 384 on April 19, 2013. Def.'s Notice of Removal 7 ("Plaintiff's Petition"), ECF No. 1. In his Petition, Plaintiff alleges that he is a resident of Las Cruces, New Mexico, and that he began working in October 2011 as a

laborer in "El Paso/Fort Bliss, Texas" for Defendant, a corporation headquartered in California. Pl.'s Pet. 1-4.

Plaintiff alleges that he has a mental disability. *Id.* at 2. According to the Petition, Defendant's employees discriminated against Plaintiff by subjecting him to unsafe working conditions and harassment because of his mental disability. *Id.* at 2-4. Plaintiff further alleges that Defendant's unsafe practices, such as requiring employees to work in rat-infested sewers without proper safety equipment, were in violation of the Occupational Safety and Health Act ("OSHA"). *Id.* at 3. Plaintiff also alleges that he became physically injured at his workplace while using a motor vehicle that was attached to a damaged trailer. *Id.* Plaintiff alleges that the trailer became unhooked and caused the motor vehicle to stop abruptly, thereby injuring Plaintiff. *Id.*

According to the Petition, Plaintiff subsequently filed a workers' compensation claim based on Plaintiff's workplace injury. *Id.* at 5-6. Plaintiff also allegedly filed a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding the discriminatory treatment that Plaintiff had experienced while working for Defendant, after which Defendant's employees retaliated against him with additional harassment. *Id.* at 4.

Although the Petition is ambiguous about the circumstances surrounding the termination of Plaintiff's employment, Defendant is alleged either to have constructively discharged Plaintiff in October 2012 or fired Plaintiff on April 11, 2013. *Id.* at 3-4. According to the Petition, Plaintiff's employment was terminated either because of his mental disability, because Plaintiff filed the worker's compensation claim after his workplace injury, because Plaintiff filed a complaint with the EEOC, or because Plaintiff refused to participate in Defendant's violations of OSHA. *See id.* at 3-11.

2

Plaintiff's Petition raises ten causes of action based on Defendant's treatment of Plaintiff, four of which arise under federal or Texas statutes and six of which arise under Texas common law. *Id.* at 2-10. As to all of his claims, Plaintiff alleges that the injurious conduct was committed by Guadalupe Hernandez, Luis Marquez, Alejandro Cortez, and Alma Blair, all of whom were "agents, servants, and employees of Defendant" and were acting in the course and scope of their authority when they allegedly caused injury to Plaintiff. *See id.* at 3, 9-10. Though none of these individuals is a named defendant in this case, Plaintiff claims that responsibility for these individuals' actions should be imputed to Defendant under the doctrine of vicarious liability. *See id.*

In support of his first and second statutory claims, Plaintiff alleges that Defendant discriminated against Plaintiff on the basis of his mental disability and thereby violated the federal ADA and § 21.051 of the Texas Commission on Human Rights Act ("TCHRA").[1] *Id.* at 4-5. In his third claim, Plaintiff alleges that Defendant violated § 21.055 of the TCHRA by retaliating against Plaintiff for contacting the EEOC. *Id.* at 4. In his fourth claim, Plaintiff alleges that Defendant also violated § 451.001 of the Texas Labor Code ("the Anti-Retaliation Law")[2] by retaliating against Plaintiff after he instituted a claim under the Texas Workers' Compensation Act ("TWCA") based on his workplace injury involving the damaged trailer. *Id.*

---

[1] Although the Texas Commission on Human Rights has been replaced with the Texas Workforce Commission's civil rights division, Texas courts often continue to refer to Chapter 21 of the Texas Labor Code as the Texas Commission on Human Rights Act ("TCHRA"). *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502 n.1 (Tex. 2012); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010).

[2] The Anti-Retaliation Law is codified at Chapter 451 of the Texas Labor Code. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 54 (Tex. 2011). Texas courts often refer to the Anti-Retaliation Law as a part of the Texas Workers' Compensation Act ("TWCA"), although the original version of the TWCA was enacted in 1913—decades prior to the enactment of the Anti-Retaliation Law in 1971. *See In re Poly-Am.*, L.P., 262 S.W.3d 337, 349-50 (Tex. 2008). Because these statutes' dates of enactment are significant to the Court's analysis of these statutes under the federal enclave doctrine, as explained further below, this Court uses separate terms in this decision to distinguish between Chapter 451 and the other provisions of the TWCA.

at 5.

Plaintiff brings his fifth claim for common-law negligence and gross negligence based on Defendant's failure to follow proper safety protocols and creation of hazardous working conditions. *Id.* at 3, 9. In his sixth claim, Plaintiff alleges that Defendant committed the tort of negligent investigation by firing Plaintiff on the basis of an inadequate investigation. *See id.* at 10-11. In his seventh claim, Plaintiff alleges that Defendant intentionally invaded Plaintiff's solitude, seclusion, and privacy by making lewd comments, physically touching Plaintiff, eavesdropping on Plaintiff's private conversations, and continually berating and harassing Plaintiff. *Id.* at 7. In his eighth claim, Plaintiff alleges that Defendant committed the common-law tort of IIED. *Id.* at 8. In his ninth claim, Plaintiff alleges that Defendant wrongfully terminated Plaintiff for refusing to participate in an illegal act. *Id.* at 3, 11. In his tenth and final claim, Plaintiff alleges that Defendant violated a common-law duty owed to Plaintiff by negligently hiring, training, and retaining Plaintiff's supervisors, and thereby causing injury to Plaintiff. *See id.* at 6.

Defendant removed this action on May 17, 2013, invoking this Court's jurisdiction on two distinct grounds. First, Defendant asserts that this case falls within the Court's federal question jurisdiction under 28 U.S.C. § 1331, because Plaintiff asserts a claim under the ADA and because the conduct at issue occurred on Fort Bliss, which Defendant characterizes as a federal enclave. Def.'s Notice of Removal 2, ECF No. 2. Second, Defendant asserts that this case falls within the Court's diversity jurisdiction under 28 U.S.C. § 1332, because Plaintiff is a citizen of New Mexico, Defendant is a citizen of California, and the amount in controversy exceeds $75,000. *Id.* at 2-3.

On June 14, 2013, Defendant filed the present Motion to Dismiss.  *See* Def.'s Mot., ECF No. 2.

## II.    DISCUSSION

### A.    Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011).  Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citation omitted).  Nevertheless, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

5

**B.      Analysis**

In its Motion to Dismiss, Defendant raises three categories of arguments.  First, Defendant argues that Plaintiff's claims for discrimination and retaliation under the TCHRA and the Anti-Retaliation Law must be dismissed because the relevant provisions of these statutes were enacted after Fort Bliss became a federal enclave and, therefore, have no force on Fort Bliss under the federal enclave doctrine.  Def.'s Mot. 3.  Second, Defendant argues that each of Plaintiff's six common-law claims must be dismissed to the extent that they are based on the same conduct as Plaintiff's claims under Texas statutes.  *See id.* at 11; Def.'s Reply 3, ECF No. 3.  Third, Defendant argues that Plaintiff has failed to allege sufficient facts to support eight of his ten claims under Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, although this argument is not raised with respect to Plaintiff's claims of retaliation under the TCHRA and the Anti-Retaliation Law.  *See* Def.'s Mot. 6-11.  Finally, in the event that the Court does not dismiss Plaintiff's claims on these grounds, Defendant moves under Rule 12(e) of the Federal Rules of Civil Procedure for a more definite statement.  *Id.* at 11.

As explained further below, Defendants' first and second arguments both concern the relationship between the federal enclave doctrine and the Texas Labor Code.  Therefore, after first examining the relevant background of the federal enclave doctrine, the Court addresses Defendant's first and second arguments together.   The Court then addresses each of Defendant's arguments regarding the insufficiency of the factual allegations supporting Plaintiff's individual claims under Rules 8(a) and 12(b)(6).  Finally, the Court identifies those of Plaintiff's claims for which a more definite statement is required under Rule 12(e).

**1.      The federal enclave doctrine, Texas statutes, and Texas common law**

The first argument raised in Defendant's Motion to Dismiss is that Plaintiff's claims for

6

discrimination and retaliation under the TCHRA and the Anti-Retaliation Law must be dismissed because the provisions creating these causes of action were enacted "after Fort Bliss became a federal enclave" and, therefore, have no force on Fort Bliss under the federal enclave doctrine. Def.'s Mot. 3-4.   The second argument raised by Defendant is that Plaintiff's common-law claims for negligence and gross negligence, negligent investigation, intrusion upon seclusion, IIED, wrongful termination, and negligent hiring all must be dismissed because they were abrogated by the TCHRA and the TWCA.   Def.'s Mot. 5; Def.'s Reply 3.   Put more succinctly, Defendant argues that the federal enclave doctrine prevents Plaintiff from invoking the TCHRA and the Anti-Retaliation Law as statutory sources of liability, but does not prevent Defendant from invoking the TCHRA and the TWCA as statutory shields against common-law liability.

The federal enclave doctrine arises under Article I, Section 8, Clause 17, of the United States Constitution, which authorizes the federal government to acquire land from the states for certain specified uses and to exercise exclusive legislative jurisdiction over such lands.   *Lord v. Local Union No. 2088, Int'l Bhd. of Elec. Workers, AFL-CIO*, 646 F.2d 1057, 1059 (5th Cir. 1981); *Morgan v. Rankin*, 436 F. App'x 365, 365 (5th Cir. 2011).   With several exceptions,[3] any "laws of the state adopted after the cession [of land to the federal government] are without any force or effect on the federal enclave."   *Lord*, 646 F.2d at 1059-60; *Morgan*, 436 F. App'x at

---

[3] The first of these exceptions arises where Congress has provided for the application of certain discrete bodies of state law enacted after the creation of the federal enclave.   For example, Congress made such a provision in the Assimilative Crimes Act, which is codified at 18 U.S.C. § 13.   *See United States v. Sharpnack*, 355 U.S. 286, 294-95 (1958); *United States v. Martinez*, 274 F.3d 897, 900 (5th Cir. 2001); *United States v. Prejean*, 494 F.2d 495, 496-97 (5th Cir. 1974).   This exception is implicated by Defendant's Motion to Dismiss under a different statute, 40 U.S.C. § 3172 (previously codified at 40 U.S.C. § 290), and is applied below in Section II-B-1-b.   A second exception arises where states expressly reserve certain powers at the time when they consent to the cession of land to the United States.   *See James v. Dravo Contracting Co.*, 302 U.S. 134, 146 (1937); *Mississippi River Fuel Corp. v. Cocreham*, 390 F.2d 34, 37 (5th Cir. 1968).   A third exception arises where state regulatory schemes were already in place when the state ceded sovereignty but require ongoing maintenance from a regulatory body subsequent to the date of cession.   *See Paul v. United States*, 371 U.S. 245, 269 (1963); *Allison v. Boeing Laser Technical Servs.*, 689 F.3d 1234, 1238 (10th Cir. 2012).   Neither the second nor the third of these exceptions is implicated by Defendant's Motion to Dismiss.

365.  To ensure, however, that "no area, however small, will be left without laws regulating private rights," the federal enclave doctrine effectively freezes pre-existing state law within the area of exclusive federal jurisdiction at the date of cession "until [the pre-existing state law is] abrogated or altered by the new sovereign." *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952). The act of cession therefore incorporates into the federal law governing these lands all state law that "was in force at the time of the cession, where such state law is not inconsistent with federal law or policy." *Lord*, 646 F.2d at 1059-60; *Morgan*, 436 F. App'x at 365.

Many of the judicial decisions considering the applicability of state law within an area of exclusive federal jurisdiction have addressed states' legislative acts passed before or after the date of cession. *See, e.g.*, *Pac. Coast Dairy v. Dep't of Agric. of Cal.*, 318 U.S. 285, 294 (1943) (finding that "[t]he state statute involved was adopted long after the transfer of sovereignty and was without force in the enclave"); *Chicago, R.I. & P. Ry. Co. v. McGlinn*, 114 U.S. 542, 544, 547 (1885) (finding that a Kansas statute enacted in 1874 remained in effect on Fort Leavenworth, even after the land was ceded to the United States in 1875); *Lord*, 646 F.2d at 1060-63 (considering whether a 1944 amendment to the Florida constitution was applicable on Cape Canaveral Air Force Station, which was ceded to the United States in 1955, or to Patrick Air Force Base, which was ceded to the United States in 1940, and concluding that a federal policy barred application of Florida's constitutional amendment to either installation).

Far fewer courts, however, have addressed how the federal enclave doctrine applies to *common-law* causes of action recognized by a state's judiciary after the date of cession. The Court is not aware of any decisions where the courts of the Fifth Circuit have considered this question, and neither Plaintiff nor Defendant has identified any such decisions. A number of courts outside the Fifth Circuit, however, have found that the federal enclave doctrine does

"apply to new laws created by courts the same way that it applies to new laws created by legislatures." *See Allison v. Boeing Laser Technical Servs.*, 689 F.3d 1234, 1240 (10th Cir. 2012); *Cooper v. S. Cal. Edison Co.*, 170 F. App'x 496, 497 (9th Cir. 2006); *Sundaram v. Brookhaven Nat. Laboratories*, 424 F. Supp. 2d 545, 570 (E.D.N.Y. 2006); *Orlovetz v. Day & Zimmerman, Inc.*, 848 P.2d 463, 466-68 (Kan. Ct. App. 1993). The Court is not aware of any contrary authority, and the parties have not presented any arguments in favor of analyzing statutory and common-law claims differently. Accordingly, this Court also concludes that, where a state's courts recognize new common-law causes of action after the date when the state ceded certain lands to the exclusive jurisdiction of the federal government, those common-law causes of action have no force on these federal lands. *Allison*, 689 F.3d at 1243-44; *Cooper*, 170 F. App'x at 497.

Conversely, a pre-existing common-law cause of action may remain viable on an area of exclusive federal jurisdiction after the date of cession, even where the state's legislature has subsequently enacted a statute to abrogate this common-law cause of action as to the areas of the state outside the federal enclave. *See James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940) (analyzing *Arlington Hotel Co. v. Fant*, 278 U.S. 439 (1929)); *Buttery v. Robbins*, 14 S.E.2d 544, 548 (Va. 1941) (analyzing *Fant*). For example, the United States Supreme Court held in *Fant* that an innkeeper's guests could bring a common-law cause of action against the innkeeper for fire damage to the guests' personal property in Hot Springs Park, even though the Arkansas legislature had abrogated this common-law cause of action by statute. *See Fant*, 278 U.S. at 445-46, 455. Because Hot Springs Park had been ceded to the federal government in 1904 and the Arkansas statute abrogating innkeepers' liability for fire damage was not enacted until 1913, the common-law cause of action survived within the area of exclusive federal

9

jurisdiction.  *See id.*; *see also Sadrakula*, 309 U.S. at 100 (analyzing *Fant*); *Buttery*, 14 S.E.2d at 548 (analyzing *Fant*).

Therefore, to summarize the basic contours of the federal enclave doctrine as it relates to Defendant's Motion to Dismiss, all state laws "in force at the time of the cession" remain in force after the date of cession unless contrary to existing federal law or policy, or until such state laws are subsequently abrogated by the federal government, whereas any "laws of the state adopted after the cession are without any force or effect on the federal enclave."  *Lord*, 646 F.2d at 1059-60.  This principle does not distinguish between "laws of the state adopted after the cession" by a legislature and those that are "adopted" by the judiciary into a state's common law.  *Allison*, 689 F.3d at 1243-44; *Cooper*, 170 F. App'x at 497.  Similarly, this principle does not distinguish between statutes that create new sources of liability and those that abrogate pre-existing common-law causes of action.  *See Fant*, 278 U.S. at 445-46, 455; *see also Sadrakula*, 309 U.S. at 100 (analyzing *Fant*); *Buttery*, 14 S.E.2d at 548 (analyzing *Fant*).  Put simply, only "the new sovereign" can act to abrogate or alter any pre-existing law after sovereignty over land has been transferred from the state to the United States.  *See Mater*, 200 F.2d at 124.

As a final matter, before turning to address the arguments in Defendant's Motion to Dismiss, the Court emphasizes that not all lands owned and used by the federal government are subject to its exclusive jurisdiction.  According to the terms of Article I, Section 8, Clause 17, of the Constitution, the United States may exercise "exclusive" legislative jurisdiction over land only where the transfer of such land was approved by "the Consent of the Legislature of the State in which the same shall be."  U.S. Const., Art. I, § 8.  "[W]ithout the State's consent," the United States' power over the land it "acquire[s] by purchase or condemnation" is "simply that of an ordinary proprietor," rather than the authority of the exclusive sovereign.  *Paul v. United States*,

371 U.S. 245, 264-65 (1963); *United States v. Gliatta*, 580 F.2d 156, 158 n.6 (5th Cir. 1978);

*DeKalb Cnty., Ga. v. Henry C. Beck Co.*, 382 F.2d 992, 994-95 (5th Cir. 1967); *Wood v. Am.*

*Crescent Elevator Corp.*, CIV.A. 11-397, 2011 WL 1870218, at *2 (E.D. La. May 16, 2011).

Where the federal government owns and uses certain land not as its exclusive sovereign, but

merely as its proprietor due to the absence or defectiveness of the state's consent to the federal

acquisition, then these segments of the federal facility are not subject to the federal enclave

doctrine and the state's law applies of its own force.  *See Paul*, 371 U.S. at 269-70.

 Accordingly, due to the piecemeal manner in which such federal installations are often

acquired by the United States, military bases may contain "numerous units [of land] acquired at

various times, some of which may be subject to 'exclusive' federal jurisdiction and some of

which may not be."  *See Paul*, 371 U.S. at 269-70 (discussing the nature of federal authority over

Travis Air Force Base, Castle Air Force Base, and Oakland Army Terminal); *Torrens v.*

*Lockheed Martin Servs. Grp., Inc.*, 396 F.3d 468, 469 (1st Cir. 2005) (considering whether the

"piers area" of a Navy base at Roosevelt Roads was subject to the Puerto Rican local law in force

at the time of the suit or, like the rest of the Navy base, was an area of exclusive federal

jurisdiction); *see also Commonwealth of Va. v. Reno*, 955 F. Supp. 571, 573 (E.D. Va. 1997)

(finding that a federal correctional facility in Virginia was acquired by the United States in a

series of separate transactions occurring between 1910 and 1953, such that "[t]he United States

has varying degrees of jurisdiction over [the federal facility's] nine parcels") (vacated for

mootness prior to appeal by *Commonwealth of Virginia v. Reno*, 122 F.3d 1060 (4th Cir. 1997)).

 Therefore, on those segments of a federal facility where the United States does not act as

the exclusive sovereign, but merely as the proprietor, then these segments of the federal facility

are not subject to the federal enclave doctrine.  *See Paul*, 371 U.S. at 269-70; *Torrens*, 396 F.3d

at 469.  Indeed, because different sections of Fort Bliss were acquired in a series of different

transactions over many decades, it may be that not all of Fort Bliss is subject to the same

jurisdiction under the federal enclave doctrine.[4]  *See Cent. Ed. Agency v. Indep. Sch. Dist. of City*

*of El Paso*, 254 S.W.2d 357, 358-59 (Tex. 1953) (observing that while "Fort Bliss Military

Reservation contained an area of 8.98 square miles" in 1939, the federal government had

"enlarged the area" to contain "approximately 101 square miles" by 1949); *Hardcastle v. Sibley*,

107 S.W.2d 432, 437 (Tex. Civ. App. 1937) (describing an appropriation by the United States in

1930 "for the purpose of acquiring land adjacent to Fort Bliss for the enlargement of said fort");

*see also Hart's Adm'r v. United States*, 15 Ct. Cl. 414, 425 (1879) (referring to contracts for the

delivery of flour to Fort Bliss "during the first quarter of 1861"); *Moore & Boice v. United*

*States*, 1 Ct. Cl. 90, 90-91 (1863) (discussing a 1859 invitation for bids that mentioned Fort

Bliss).

            a.      **Plaintiff's statutory claims and the federal enclave doctrine**

        Defendant argues that Plaintiff's claims for discrimination and retaliation under the

TCHRA and the Anti-Retaliation Law must be dismissed because both of these statutes were

enacted "after Fort Bliss became a federal enclave" and, therefore, have no force on Fort Bliss

under the federal enclave doctrine.  Def.'s Mot. 3-4.  Texas enacted § 21.051 and § 21.055 of the

Texas Labor Code in 1983, and § 451.001 in 1971.  *See* Commission on Human Rights Act,

1983 Tex. Gen. Laws 37, 37-58 (codified under Chapter 21 of the Texas Labor Code, 1993 Tex.

---

[4]  This Court also recognizes the corollary that where a federal installation encompasses many "parcels of land acquired over a period" of many years, "[t]he application of state law as it existed at the time of federal acquisition" may require the "application of different law to the various components" of the federal installation, even where sovereignty as to the entire federal installation has been ceded to the federal government.  *See Bd. of Sup'rs of Fairfax Cnty., Va. v. United States*, 408 F. Supp. 556, 564 (E.D. Va. 1976) *dismissed sub nom. Bd. of Sup'rs of Fairfax Cnty., Va. v. Levi*, 551 F.2d 305 (4th Cir. 1977) and *dismissed sub nom. Bd. of Supervisors of Fairfax Cnty., Va. v. Dist. of Columbia*, 551 F.2d 305 (4th Cir. 1977).  At the present stage of these proceedings, however, this Court need not reach this question.

Gen. Laws 987, 995-96); Workmen's Compensation Act—Protection of Claimants, 1971 Tex. Gen. Laws 884, 884-85 (codified under Chapter 451 of the Texas Labor Code, 1993 Tex. Gen. Laws 1235); *see also Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012) (discussing the enactment of the TCHRA in 1983); *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 55 (Tex. 2011) (discussing the enactment of the Anti-Retaliation Law in 1971). Under the federal enclave doctrine, therefore, Plaintiff's claims under the TCHRA cannot be sustained on any lands of exclusive federal jurisdiction ceded before 1983, and Plaintiff's claims under the Anti-Retaliation Law must fail on any lands of exclusive federal jurisdiction ceded before 1971.  *Lord*, 646 F.2d at 1059-60; *Morgan*, 436 F. App'x at 365.

When viewed "in the light most favorable" to Plaintiff, however, the Petition may be read to allege that Defendant's acts of discrimination and retaliation did not occur on Fort Bliss, which would render the federal enclave doctrine irrelevant in this case.  *See Calhoun*, 312 F.3d at 733; *Collins*, 224 F.3d at 498.  In cases involving the relationship between the federal enclave doctrine and claims of discrimination and retaliation under the Texas Labor Code, this Court has held that these causes of action occur at "the locus of decision-making."  *Sturgeon v. Jackson*, EP-10-CV-244-PRM, 2011 WL 3678472, at *4 (W.D. Tex. Feb. 9, 2011); *Camargo v. Gino Morena Enterprises, L.L.C.*, EP-10-CV-242-KC, 2010 WL 3516186, at *2 (W.D. Tex. Sept. 2, 2010); *Lawler v. Miratek Corp.*, EP-09-CV-252-KC, 2010 WL 743925, at *4 (W.D. Tex. Mar. 2, 2010).  "The fact that the employee's day-to-day job site is on a federal enclave, alone, is not sufficient for these purposes; rather the location where management made the allegedly illegal decision controls."  *Sturgeon*, 2011 WL 3678472, at *4 (citing *Lawler*, 2010 WL 743925, at *3-4).

13

Here, Defendant argues that Plaintiff's "employment was limited to work on federal property," but this is not apparent from the face of the Petition itself. *See* Def.'s Notice of Removal 1. Plaintiff refers to his "employment with [Defendant] in El Paso/Fort Bliss," which suggests that Plaintiff may have performed some of the duties associated with his position in a part of El Paso that is distinct from Fort Bliss. *Id.* at 2. It is also relevant that, wherever Plaintiff performed his day-to-day duties, the Petition states that Defendant "did business in El Paso, El Paso County, Texas that caused the 'incident' that is the subject of this lawsuit," and that Defendant's headquarters is based in California. Pl.'s Pet. 1-2. These statements can be read to allege that Defendant made the allegedly discriminatory and retaliatory decisions in El Paso, but off of Fort Bliss, or at Defendant's headquarters in California. *See Sturgeon*, 2011 WL 3678472, at *4 (citing *Lawler*, 2010 WL 743925, at *3-4). Therefore, construing the Petition in the light most favorable to Plaintiff, Defendant's allegedly injurious conduct did not occur on Fort Bliss. *See Calhoun*, 312 F.3d at 733; *Collins*, 224 F.3d at 498. The federal enclave status of Fort Bliss thus is no obstacle to this group of Plaintiff's claims. *See Lord*, 646 F.2d at 1059-60; *Morgan*, 436 F. App'x at 365.

Second, even if Defendant's allegedly retaliatory or discriminatory decisions did occur on Fort Bliss or "on federal property," as Defendant urges the Court to construe the Petition, *see* Def.'s Notice of Removal 1, such decisions still may have occurred on parts of Fort Bliss that do not constitute areas of exclusive federal jurisdiction. The federal enclave doctrine is not applicable to all land that has been acquired by the United States "by purchase or condemnation," but arises only where the state has consented to the transfer of sovereignty. *See Paul*, 371 U.S. at 264-65; *Gliatta*, 580 F.2d at 158 n.6; *DeKalb Cnty.*, 382 F.2d at 994-95; *Wood*, 2011 WL 1870218, at *2. A military base such as Fort Bliss, for example, may contain

"numerous units [of land] acquired at various times, some of which may be subject to 'exclusive' federal jurisdiction and some of which may not be." *See Paul*, 371 U.S. at 269-70; *Torrens*, 396 F.3d at 469; *Reno*, 955 F. Supp. at 573 (vacated for mootness by *Reno*, 122 F.3d at 1060). Indeed, because different parts of Fort Bliss were acquired in a series of different transactions, these different units of land may not all be subject to the same jurisdiction under the federal enclave doctrine. *See Cent. Ed. Agency*, 254 S.W.2d at 358-59; *Hardcastle*, 107 S.W.2d at 437.

Therefore, even if Defendant's allegedly retaliatory or discriminatory decisions occurred on federal property associated with Fort Bliss, nothing in Plaintiff's Petition indicates that such decisions necessarily occurred on those segments of the installation[5] where the federal government has acquired exclusive federal jurisdiction, as opposed to the powers of an ordinary proprietor. *See Paul*, 371 U.S. at 264-65; *Gliatta*, 580 F.2d at 158 n.6; *DeKalb Cnty.*, 382 F.2d at 994-95. Defendant also has not adduced any public records or identified any reason that the Court should conclude at this early stage of the proceedings that all of the lands comprising Fort Bliss are necessarily areas of exclusive federal jurisdiction. If Defendant's allegedly unlawful conduct occurred on segments of Fort Bliss where the federal government acts only as a proprietor, such that Texas statutory law enacted after the date of federal acquisition continues to apply of its own force, then the federal enclave doctrine provides no basis for the dismissal of Plaintiff's claims under the TCHRA and the Anti-Retaliation Law. *See Paul*, 371 U.S. at 264-

---

[5] According to Fifth Circuit case law, at least some portions of Fort Bliss do constitute areas of exclusive federal jurisdiction under the federal enclave doctrine. *See Prejean*, 494 F.2d at 496-97. Indeed, as Defendant points out, the United States Court of Appeals for the Fifth Circuit and another judge of this Court have found in unpublished decisions that claims under the TCHRA should be dismissed where the parties had not disputed that the discriminatory conduct took place within areas of exclusive federal jurisdiction. *See Morgan*, 436 F. App'x at 365; *Morgan v. Rankin*, EP-10-CV-143-FM, at *5-6 (W.D. Tex. Aug. 25, 2010); *Rodriguez v. HCI Integrated Solutions*, EP-09-CV-311-FM, at *8-9 (W.D. Tex. Dec. 18, 2009). The present case is distinguishable from these decisions, however, because Plaintiff has not conceded the applicability of the federal enclave doctrine to his statutory claims and has explicitly argued that Defendant's unlawful actions did not take place "wholly within the enclave." *See* Pl.'s Resp. 3, ECF No. 5.

65; *Gliatta*, 580 F.2d at 158 n.6; *DeKalb Cnty.*, 382 F.2d at 994-95; *Wood*, 2011 WL 1870218, at *2.

For these two distinct reasons,[6] therefore, the Court cannot dismiss Plaintiff's claims of disability discrimination under § 21.051 of the TCHRA, retaliation for filing a complaint with the EEOC under § 21.055 of the TCHRA, or retaliation for filing a worker's compensation claim under § 451.001 of the Anti-Retaliation Law based on the federal enclave doctrine.  While the Petition can be construed, as Defendant argues, to allege that Defendant's unlawful actions occurred entirely on areas of exclusive federal jurisdiction that were ceded to the United States prior to the enactment of the TCHRA and the Anti-Retaliation Law, the Petition can also be read to allege that the unlawful decisions were made in California, in areas of El Paso outside of Fort Bliss, or on sections of Fort Bliss as to which the United States is the proprietor but not the exclusive sovereign.  *See Sturgeon*, 2011 WL 3678472, at *4 (citing *Lawler*, 2010 WL 743925, at *3-4).  Accordingly, at this stage in the proceedings, the Court must accept this construction of

---

[6]  A third reason that potentially affects only Plaintiff's claim under § 451.001 of the Anti-Retaliation Law is that a federal statute, 40 U.S.C. § 3172, may provide for the application of the Anti-Retaliation Law even within areas of exclusive federal jurisdiction.  This statute permits "[t]he state authority charged with enforcing and requiring compliance with the state workers' compensation laws and with the orders, decisions, and awards of the authority may apply the laws to all land and premises in the State which the Federal Government owns or holds by deed or act of cession."  *See* 40 U.S.C. § 3172.

As this Court explains in greater detail below in Section II-B-1-b, this statute does apply to other provisions of the Texas Labor Code, including the scheme for workers' compensation in Texas under the TWCA.  *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 183 (1988); *Knox v. Ball*, 191 S.W.2d 17, 18 (Tex. 1945).  The Anti-Retaliation Law, however, is generally enforced by the injured employee himself in a private lawsuit, rather than by the Texas Workforce Commission.  *See, e.g.*, *Travis Cent. Appraisal Dist.*, 342 S.W.3d at 55.  It is therefore uncertain that 40 U.S.C. § 3172, which expressly empowers only "[t]he state authority charged with enforcing and requiring compliance" to act within the federal enclave, also contemplated retaliation claims brought by private parties such as Plaintiff.  *See* 40 U.S.C. § 3172.  On the other hand, the Anti-Retaliation Law and the TWCA are closely interconnected, because the TWCA "would be completely useless and would not accomplish the purpose for which it was enacted" if employers were not prohibited under the Anti-Retaliation Law from retaliating against employees for invoking the TWCA.  *See Poly-Am., L.P.*, 262 S.W.3d at 350.

In any case, since neither Plaintiff nor Defendant has addressed this possibility and because the Court cannot grant Defendant's Motion to Dismiss as to Plaintiff's retaliation claim under § 451.001 for the two independent reasons set forth above, the Court need not reach any conclusions about the application of 40 U.S.C. § 3172 to the Anti-Retaliation Law at this stage of the proceedings.

the Petition.  *See Calhoun*, 312 F.3d at 733; *Collins*, 224 F.3d at 498.  The Court cannot,

therefore, accept Defendant's argument that the federal enclave doctrine necessarily applies to

foreclose any of Plaintiff's statutory claims.  *See Paul*, 371 U.S. at 264-65, 69-70; *Gliatta*, 580

F.2d at 158 n.6.

### b.        Plaintiff's common-law claims and the federal enclave doctrine

Defendant also argues that Plaintiff's common-law claims for negligence and gross

negligence, negligent investigation, intrusion upon seclusion, IIED, wrongful termination, and

negligent hiring all must be dismissed to the extent they are "based on the same alleged conduct"

as Plaintiff's statutory claims under the TCHRA and the Anti-Retaliation Law.  Def.'s Mot. 5.

Clarifying this argument in its Reply,[7] Defendant argues that Plaintiff's common-law claims are

barred by various provisions of Texas statutory law, including the preclusive effects of the

TCHRA as a whole and § 408.001(a) of the TWCA and the Anti-Retaliation Law.  Def.'s Reply

3.

Under Texas law, "the enactment of a statutory cause of action" will "abrogat[e] a

common-law claim if there exists 'a clear repugnance' between the two causes of action."  *See*

*Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802 (Tex. 2010); *Cash Am. Int'l Inc. v. Bennett*,

35 S.W.3d 12, 16 (Tex. 2000).  Accordingly, the Supreme Court of Texas has held that because

the TCHRA constitutes "the Legislature's specific and tailored anti-harassment remedy," this

---

[7]  In Defendant's Motion to Dismiss, Defendant argues that all such common-law claims are "gap-fillers," but cites only to cases that address the tort of IIED.  *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  The Court is not aware of any decisions that have analyzed the torts of negligence, gross negligence, negligent hiring, negligent investigation, intrusion upon seclusion, or wrongful termination as "gap-fillers," and therefore will address the "gap-filler" argument below in Section II-B-3-b with specific reference only to Plaintiff's IIED claim.  Based on the clarifications in Defendant's Reply, the Court considers Defendant's "gap-filler" argument in relation to Plaintiff's other claims as a reference to the principle governing the implicit abrogation of common-law claims by statute that was described by the Supreme Court of Texas in *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802 (Tex. 2010).

statute preempts common-law claims of negligent hiring where "the complained-of negligence is entwined with the complained-of harassment." *See Waffle House, Inc.*, 313 S.W.3d at 799, 802; *Woldetadik v. 7-Eleven, Inc.*, 881 F. Supp. 2d 738, 743 (N.D. Tex. 2012). Similarly, the TWCA created a legislative scheme that "replaced the common law negligence remedy with limited but more certain benefits for injured workers" in actions against their employers. *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 510-11 (Tex. 1995); *see also In re Poly-Am., L.P.*, 262 S.W.3d 337, 350 (Tex. 2008) ("[R]ecovery of benefits under the Workers' Compensation Act is the exclusive remedy available to injured employees of subscribing employers.").

Here, Defendant's arguments regarding the effects of the TCHRA and the TWCA on Plaintiff's claims of negligence and gross negligence, negligent investigation, intrusion upon seclusion, IIED, wrongful termination, and negligent hiring must be analyzed individually. The Court has already recognized in its preceding analysis that the TCHRA may be applicable to some or all of Defendant's alleged conduct in this case. Plaintiff's Petition can be read to allege that Defendant's unlawful conduct occurred in California, in areas of El Paso distinct from Fort Bliss, or within sections of Fort Bliss as to which the United States acts as the proprietor but not the exclusive sovereign. *See Sturgeon*, 2011 WL 3678472, at *4 (citing *Lawler*, 2010 WL 743925, at *3-4). In such locations, the federal enclave doctrine cannot prevent or alter the application of the TCHRA in any way. *See Paul*, 371 U.S. at 264-65, 69-70; *Gliatta*, 580 F.2d at 158 n.6. In such locations, therefore, the TCHRA will abrogate any common-law claim where "a clear repugnance" exists between the remedies available under the TCHRA and the common-law claim. *See Waffle House, Inc.*, 313 S.W.3d at 802; *Cash Am. Int'l Inc.*, 35 S.W.3d at 16.

On the other hand, as Defendant itself has argued in the context of Plaintiff's statutory claims for discrimination and retaliation, the Petition can also be construed to allege that Plaintiff

18

was injured on Fort Bliss in an area of exclusive federal jurisdiction that was ceded before the enactment of the TCHRA.  *See* Pl.'s Pet. 2-3; Def.'s Mot. 1, 3-4.  Plaintiff refers to his "employment with [Defendant] in El Paso/Fort Bliss," which suggests that he may have performed some of the duties associated with his position on Fort Bliss itself.  Pl.'s Pet. 2. Indeed, while the area constituting Fort Bliss has certainly not been static in size or location during its history, the Fifth Circuit had already explicitly recognized—nearly a decade prior to the enactment of the TCHRA—that at least certain sections of Fort Bliss constitute areas of exclusive federal jurisdiction.  *See United States v. Prejean*, 494 F.2d 495, 496-97 (5th Cir. 1974).

Therefore, at this stage in the proceedings, the Court need not make any finding as to whether any of Plaintiff's common-law claims for negligence and gross negligence, negligent investigation, intrusion upon seclusion, IIED, wrongful termination, and negligent hiring are abrogated by the TCHRA.  Even if this statute did abrogate one or more of Plaintiff's common-law claims when it was enacted in 1983, Defendant's relevant conduct may have occurred within an area of exclusive federal jurisdiction that pre-dated the statute's enactment.  If such is the case, then Plaintiff's common-law claims were preserved from statutory abrogation under the federal enclave doctrine—much like the innkeeper's common-law liability for fire damage described in *Fant* by the Supreme Court.  *See Fant*, 278 U.S. at 445-46, 455; *Sadrakula*, 309 U.S. at 100 (analyzing *Fant*); *Buttery*, 14 S.E.2d at 548 (analyzing *Fant*); *see also Prairie View A & M Univ.*, 381 S.W.3d at 507 (discussing the enactment of Chapter 21 in 1983).  Therefore, construing the Petition in the light most favorable to Plaintiff, Defendant's Motion cannot be granted on the basis that any of Plaintiff's claims are precluded by the TCHRA.  *See Calhoun*, 312 F.3d at 733; *Collins*, 224 F.3d at 498.

19

However, with respect to the TWCA, which was enacted in 1913, the analysis is altered by a federal statute, codified at 40 U.S.C. § 3172 (previously codified at 40 U.S.C. § 290 until 2002), that permits the application of all "state workers' compensation laws" even within areas of exclusive federal jurisdiction.  *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 183 (1988); *Sadrakula*, 309 U.S. at 100-01 n.10; *Thomas v. Calavar Corp.*, 679 F.2d 416, 419 n.4 (5th Cir. 1982); *Roelofs v. United States*, 501 F.2d 87, 91 (5th Cir. 1974); *Knox v. Ball*, 191 S.W.2d 17, 18 (Tex. 1945).  As the United States Supreme Court explained in *Sadrakula*, certain statutes have been enacted to create uniformity "between the municipal laws of the state and those of the federal parcel" as to certain bodies of law, including laws governing worker's compensation.  *Sadrakula*, 309 U.S. at 100.  Accordingly, "the same workers' compensation award" is available "for an employee injured at a federally owned facility as the employee would receive if working for a wholly private facility."  *Goodyear Atomic Corp.*, 486 U.S. at 183-84.

The TWCA therefore applies even within those areas of Fort Bliss that are under exclusive federal jurisdiction.  In *Goodyear Atomic Corporation*, the United States Supreme Court specifically cited the Texas Workers' Compensation Act as an example of "the type of workers' compensation scheme" contemplated by Congress when it enacted the previous version of 40 U.S.C. § 3172.[8]  *Id.* at 183-85 n.6; *see also Knox*, 191 S.W.2d at 18 (referring to the previous version of 40 U.S.C. § 3172 in a case involving "certain workmen's compensation and public liability insurance policies" applicable in the City of Houston).  This Court therefore concludes that, like all "state workers' compensation laws" described in 40 U.S.C. § 3172, the

---

[8]  In *Goodyear Atomic Corporation*, the United States Supreme Court cited § 5 of Chapter 103 of the 1917 Texas General Laws, which replaced § 5 of the original 1913 version of the TWCA at Chapter 179 of the 1913 Texas General Laws, because the 1917 version was in effect when the predecessor to 40 U.S.C. § 3172 was enacted in 1936.  *See Goodyear Atomic Corp.*, 486 U.S. at 183-85 n.6.  The differences between these two versions of the TWCA are irrelevant to the applicability of 40 U.S.C. § 3172 to the TWCA.  *Compare* 1913 Tex. Gen. Laws 429, 430, *with* 1917 Tex. Gen. Laws 269, 271.

Texas Workers' Compensation Act applies "to all land and premises in the State which the Federal Government owns or holds by deed or act of cession."  *See* 40 U.S.C. § 3172; *Goodyear Atomic Corp.*, 486 U.S. at 183-84; *Sadrakula*, 309 U.S. at 100-01 n.10; *Thomas*, 679 F.2d at 419 n.4; *Knox*, 191 S.W.2d at 18.

Accordingly, because the federal enclave doctrine does not prevent the application of the TWCA even within those parts of Fort Bliss that are under the exclusive legislative jurisdiction of the federal government, the Court must consider the effects of the TWCA in this case. Defendant has correctly argued that the 1913 version of the TWCA "replaced the common law negligence remedy with limited but more certain benefits for injured workers" as "part of a nationwide compensation movement."  *Garcia*, 893 S.W.2d at 510-11; *Poly-Am., L.P.*, 262 S.W.3d at 350.  Additionally, § 408.001(a) of the TWCA makes explicit that employees can only recover for a work-related injury through the recovery of workers' compensation benefits.[9] *Poly-Am., L.P.*, 262 S.W.3d at 350.  Therefore, Plaintiff's claim that he was injured through Defendant's negligence and gross negligence in the workplace must be dismissed.  *See Garcia*, 893 S.W.2d at 510-11; *Poly-Am., L.P.*, 262 S.W.3d at 350.

As to Plaintiff's remaining claims for negligent investigation, intrusion upon seclusion, IIED, wrongful termination, and negligent hiring, Defendant has made no argument that these causes of action are precluded by the TWCA.  Neither party has cited any authority addressing whether or not there exists "a clear repugnance" between any of these five remaining common-law claims and the TWCA.  *See Waffle House*, 313 S.W.3d at 802; *Cash Am. Int'l Inc.*, 35

---

[9]  Under § 408.001(b) of the TWCA, the TWCA permits lawsuits against employers for gross negligence outside of the workers' compensation scheme only "by the surviving spouse or heirs of the body of a deceased employee" who bring a claim for wrongful death.  *See R&R Contractors v. Torres*, 88 S.W.3d 685, 689 (Tex. App. 2002). Because Plaintiff's claim of gross negligence arises from an alleged personal injury, but is unrelated to wrongful death, § 408.001(b) is irrelevant to this case.

S.W.3d at 16.  The Court's own review of the case law demonstrates that the tort of IIED, at least, is not barred by the TWCA in all cases.  *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 610-11 (Tex. 1999).[10]  It also appears highly unlikely, based on the analysis of the Supreme Court of Texas in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex. 1985), that the tort of wrongful termination for refusal to commit an illegal act has been abrogated by the TWCA.[11]  In any event, because neither party has made any arguments as to whether the TWCA abrogates Plaintiff's claims of negligent investigation, intrusion upon seclusion, IIED, wrongful termination, and negligent hiring in general or based on the facts alleged in the Petition, the Court need not further pursue these possibilities at this stage.

To conclude, the Court finds based on its foregoing analysis that the TCHRA does not require the dismissal of Plaintiff's common-law claims, because Defendant's injurious conduct may have occurred within an area of Fort Bliss where the pre-existing common law has not been abrogated by the TCHRA.  *See Fant*, 278 U.S. at 445-46, 455; *Sadrakula*, 309 U.S. at 100 (analyzing *Fant*); *Buttery*, 14 S.E.2d at 548 (analyzing *Fant*); *see also Prairie View A & M Univ.*, 381 S.W.3d at 507 (discussing the enactment of Chapter 21 in 1983).  By contrast, the TWCA is applicable in this case whether or not Defendant's injurious conduct is alleged to have

---

[10]  In *GTE Southwest*, the Supreme Court of Texas held that the TWCA does not abrogate IIED where the injury results from "continuing harassment and abuse" inflicted over a period of years, because the TWCA does not provide relief for "repetitive mental trauma."  *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 610-11 (Tex. 1999); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 n. 13, 818 n.24 (Tex. 2005) (citing the facts of *GTE Sw.*, 998 S.W.2d at 613-14, as an example where an IIED claim may be brought in the workplace); *Bell v. Express Energy Servs. Operating, LP*, 02-11-00019-CV, 2012 WL 2036437, at *4 (Tex. App. June 7, 2012) (same).

[11]  In *Sabine*, the Supreme Court of Texas first recognized an exception to the "employment-at-will doctrine" that permits an employee to bring an action against his employer for terminating the employee "for the sole reason that the employee refused to perform an illegal act."  *Sabine*, 687 S.W.2d at 734-35.  Both the majority's decision and Justice Kilgarlin's concurrence in *Sabine* analyzed the Anti-Retaliation Law as a statutory exception to the employment-at-will doctrine within the framework of the TWCA, suggesting that the TWCA could not have abrogated the tort of wrongful termination.  *See Sabine*, 687 S.W.2d at 734-35; *id.* at 736 (Kilgarlin, J., concurring) (concluding that the Anti-Retaliation Law "should serve as a guide" in assessing damages against an employer who commits wrongful termination).

occurred on Fort Bliss, because Congress has extended this statute's reach into federal enclaves by enacting 40 U.S.C. § 3172.  *See Goodyear Atomic Corp.*, 486 U.S. at 183-85 n.6; *Knox*, 191 S.W.2d at 18.  Accordingly, the TWCA precludes Plaintiff's claim against Defendant for negligence and gross negligence.  *See Garcia*, 893 S.W.2d at 510-11; *Poly-Am., L.P.*, 262 S.W.3d at 350.  In the absence of any argument from the parties, however, the Court will draw no similar conclusions regarding Plaintiff's common-law claims of negligent investigation, intrusion upon seclusion, IIED, wrongful termination, and negligent hiring.

### 2.    Defendant's challenges to Plaintiff's individual claims

Defendant also makes individual challenges to eight of the ten claims presented in Plaintiff's Petition based on the sufficiency of Plaintiff's factual allegations under Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure and, in the alternative, requests that Plaintiff clarify these allegations with a more definite statement under Rule 12(e).  *See* Def.'s Mot. 6-12. These requests are directed at all of Plaintiff's claims other than Plaintiff's claims of retaliation under the TCHRA and the Anti-Retaliation Law, which Defendant does not challenge on the basis of insufficient factual allegations.  *See id.*

Since Plaintiff's claim for negligence and gross negligence is abrogated by the Texas Workers' Compensation Act, the Court need only individually address the seven remaining challenges under either Rule 12(b)(6) or Rule 12(e).  As explained below, Plaintiff's claims of discrimination under the ADA and § 21.051 of the TCHRA have been sufficiently alleged, and Defendant's Motion to Dismiss must be denied as to these claims.  Defendant's Motion to Dismiss must be granted, however, with respect to Plaintiff's claim of negligent investigation, because this cause of action has never been permitted under Texas law.

Finally, Defendant's request for a more definite statement under Rule 12(e) is granted

23

with respect to Plaintiff's claims of intrusion upon seclusion, IIED, wrongful termination, and

negligent hiring.  As explained below, the relevant portions of Plaintiff's Petition are sufficiently

"vague or ambiguous" that Defendant cannot "reasonably prepare a response" to these four

claims.  *See* Fed. R. Civ. P. 12(e); *Sisk v. Tex. Parks and Wildlife Dep't*, 644 F.2d 1056, 1059

(5th Cir. 1981).

### a.        Discrimination under the ADA and the TCHRA

Defendant challenges the sufficiency of Plaintiff's allegations that Defendant

discriminated against Plaintiff on the grounds of his disability in violation of the ADA's anti-

discrimination provision at 42 U.S.C. § 12112(a), and § 21.051 of the TCHRA.  Def.'s Mot. 6-7.

Under the ADA, no covered employer "shall discriminate against a qualified individual on the

basis of disability" in regard to that employee's "discharge" or "other terms, conditions, and

privileges of employment."  *See* 42 U.S.C. § 12112(a).  Similarly, under § 21.051 of the

TCHRA, "[a]n employer commits an unlawful employment practice if because of . . . disability .

. . the employer . . . discriminates in any . . . manner against an individual in connection with

compensation or the terms, conditions, or privileges of employment."  *See* Tex. Labor Code §

21.051.  "Given the similarity between the ADA and the TCHRA, Texas courts look to

analogous federal precedent for guidance when interpreting the Texas Act," and generally

analyze such claims together.  *See Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468,

474 (5th Cir. 2006) (internal quotation marks omitted); *Talk v. Delta Airlines, Inc.*, 165 F.3d

1021, 1024 (5th Cir. 1999); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999);

*Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 925 (S.D. Tex. 2002).

A plaintiff may state a claim under the ADA by alleging (1) that he has a disability, (2)

that he is qualified for the job, and (3) that an adverse employment decision was made because of

his disability.  *Shirley v. Precision Castparts Corp.*, 2013 WL 4051760, at *3 (5th Cir. Aug. 12,

2013); *Atkins v. Salazar*, 677 F.3d 667, 675 (5th Cir. 2011); *Turco v. Hoechst Celanese Corp.*,

101 F.3d 1090, 1092 (5th Cir. 1996); *Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d

758, 763 (5th Cir. 1996).  The same elements must be alleged to support a claim under § 21.051

of the TCHRA.  *See Gober v. Frankel Family Trust*, 2013 WL 3929971, at *2 (5th Cir. July 31,

2013); *Gonnering v. Blue Cross & Blue Shield of Texas*, 420 F. Supp. 2d 660, 668 (W.D. Tex.

2006).

    In this case, Defendant does not contest that Plaintiff has a disability or that Plaintiff was

qualified for his job.  *See* Def.'s Mot. 6-8.  Rather, Defendant argues only that Plaintiff "offers

no facts" to support the allegation that Plaintiff was fired or otherwise discriminated against

"because of" his mental disability, and that Plaintiff's allegations are therefore "conclusory."

*See id.* at 7-8.  This argument cannot be sustained, however.  Plaintiff has alleged that he was

made to work without the proper safety equipment and subsequently fired or constructively

discharged, and that these instances of adverse treatment occurred "because of" Plaintiff's actual

or perceived disability.  Pl.'s Pet. 2-4.  These contentions are sufficient to give Defendant fair

notice of Plaintiff's claim that such treatment occurred "by reason of [Plaintiff's] disability" and

that Plaintiff's disability was the "determining factor" in Defendant's adverse decisions.  *See*

*Penny v. New Caney Indep. Sch. Dist.*, CIV.A. H-12-3007, 2013 WL 2295428, at *6-7 (S.D.

Tex. May 23, 2013); *Young v. Cooper Lighting, Inc.*, 5-07-CV-211-DCB, 2008 WL 4491396, at

*1-2 (S.D. Miss. Oct. 1, 2008).

    The Court must construe Plaintiff's Petition in the light most favorable to Plaintiff when

ruling upon Defendant's Motion to Dismiss.  *See Calhoun*, 312 F.3d at 733; *Collins*, 224 F.3d at

498.  Applying this standard, Plaintiff's Petition contains a sufficient allegation that various

adverse employment decisions were made as a consequence of Plaintiff's disability.  *See Shirley*, 2013 WL 4051760, at *3; *Atkins*, 677 F.3d at 675.

### b.      Negligent investigation

Defendant also challenges the sufficiency of Plaintiff's allegations as to Plaintiff's claim of "negligent investigation."  Def.'s Mot. 8-9.  In particular, Plaintiff alleges that Defendant acted negligently by "[f]ailing to conduct a proper and thorough investigation" and "[f]iring Plaintiff on the basis of an inadequate investigation."  Pl.'s Pet. 11.

No common-law tort of "negligent investigation," however, has ever been recognized by Texas courts.  *See Texas Farm Bureau Mut. Ins. Companies v. Sears*, 84 S.W.3d 604, 607 (Tex. 2002).  "In Texas, an employer generally can terminate an at-will employee for any reason or no reason at all."  *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 715 (Tex. 2003); *Sears*, 84 S.W.3d at 609 ("[T]he employment-at-will doctrine does not require an employer to be reasonable, or even careful, in making its termination decisions."); *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 503 (Tex. App. 2008) ("Texas does not recognize a cause of action for 'negligent investigation' in the employment context.").  Since Texas has never recognized this tort, moreover, there are no consequences for Plaintiff's claim of negligent investigation under the federal enclave doctrine.  The Court therefore must grant Defendant's Motion to Dismiss Plaintiff's claim for negligent investigation as a matter of law.

### 3.      Application of Rule 12(e)

As to Plaintiff's four remaining claims, Defendant's request for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure is granted.  "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e);

*Sisk v.*, 644 F.2d at 1059.  Whether to grant a motion for more definite statement is within the Court's sound discretion.  *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959); *Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648, 653-54 (N.D. Tex. 2004).  A motion under Rule 12(e) is the proper remedy where allegations in a complaint are "conclusory, confused, and unclear," but do not "justify dismissal of the suit on the merits and without leave to amend."  *See Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985).

### a.      Intrusion upon seclusion

Defendant's request for a more definite statement is granted as to Plaintiff's claim for intrusion upon seclusion.  Def.'s Mot. 9-10.  To state such a claim under Texas law, Plaintiff must allege (1) an intentional intrusion, physical or otherwise, upon another's solitude, seclusion, or private affairs or concerns that (2) would be highly offensive to a reasonable person. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); *Roberts v. CareFlite*, 02-12-00105-CV, 2012 WL 4662962 (Tex. App. Oct. 4, 2012); *Sumien v. CareFlite*, 02-12-00039-CV, 2012 WL 2579525, at *2 (Tex. App. July 5, 2012).  "[T]he core of the offense is prying into the private domain of another, not the publicity that may result . . . ."  *Sumien*, 2012 WL 2579525, at *2 (analyzing *Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex. App. 2001)).

Although Plaintiff's Petition accurately states the elements of this claim, that "Defendant intentionally invaded" Plaintiff's "solitude, seclusion, and privacy" in a manner that "would have offended any reasonable person," there are no details in Plaintiff's petition regarding this cause of action.  Pl.'s Pet. 7.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *Gulf*

*Coast Hotel-Motel Ass'n*, 658 F.3d at 506.  Though Plaintiff's Response to Defendant's Motion

to Dismiss contains the statement that "when an employee is on a bathroom break and makes a

cell phone call in a porta-potty, there is some modicum of privacy that must be respected," there

are no allegations corresponding to this statement anywhere in Plaintiff's Petition.  *See* Pl.'s

Resp. 6.  In the Court's view, therefore, Plaintiff's Petition is "ambiguous [and] does not contain

sufficient information to allow a responsive pleading to be framed," such that Defendant's

request for a more definite statement should be granted.  *See Sisk*, 644 F.2d at 1059.

### b.   IIED

Defendant also challenges Plaintiff's claim for IIED on the grounds that it is duplicative

of the other remedies that Plaintiff requests.  Def.'s Mot. 5.  Indeed, Texas law does not permit

claims for common-law IIED where other remedies are available for the same alleged injuries.

*See Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *Creditwatch*, 157

S.W.3d at 816. "[I]ntentional infliction of emotional distress is a 'gap-filler' tort never intended

to supplant or duplicate existing statutory . . . remedies. Even if other remedies do not explicitly

preempt the tort, their availability leaves no gap to fill."  *Creditwatch*, 157 S.W.3d at 816.

Federal district courts applying Texas law have therefore consistently held that an IIED

claim cannot arise from the same events and injuries that support a claim brought simultaneously

by the same plaintiff under the ADA.  *Williamson v. Am. Nat'l Ins. Co.*, 695 F. Supp.2d 431, 467

(S.D. Tex. 2010); *Gonnering v. Blue Cross & Blue Shield of Tex.*, 420 F. Supp. 2d 660, 665-66

(W.D. Tex. 2006); *Swafford v. Bank of Am. Corp.*, 401 F. Supp. 2d 761, 764-65 (S.D. Tex.

2005).  Where a common-law IIED claim relies upon "the very same facts cited by Plaintiff in

support of his claim under the ADA," the IIED claim is barred as a matter of Texas law.

*Gonnering*, 420 F. Supp. 2d at 665-66 (analyzing *Hoffman-La Roche*, 144 S.W.3d at 441).

28

However, it is not obvious from the brief description of this claim in Plaintiff's Petition that Plaintiff's claim for IIED is based on "the very same facts" that are alleged in support of Plaintiff's claim under the ADA or Plaintiff's other claims. *See Gonnering*, 420 F. Supp. 2d at 665-66. In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff suggests that "[s]ome of [Defendant's] wrongdoing is for reasons unrelated and independent" of Plaintiff's claims for retaliation and discrimination. *See* Pl.'s Resp. 4. The Court therefore finds in its discretion that Plaintiff's Petition is sufficiently ambiguous that a more definite statement must be filed before Defendant can frame a responsive pleading. *See Sisk*, 644 F.2d at 1059. Defendant's request for a more definite statement under Rule 12(e) is therefore granted with respect to Plaintiff's IIED claim.

### c.      Wrongful termination

Defendant also challenges Plaintiff's claim for wrongful termination. Def.'s Mot. 11. In his Petition, Plaintiff "pleads a cause of action against Defendant for wrongful termination for refusing to perform an illegal act." Pl.'s Pet. 11. In Texas, a "narrow exception" to the at-will employment doctrine permits an employee to bring a cause of action against his employer if he is discharged "for the sole reason that the employee refused to perform an illegal act." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012); *Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006); *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985).

In *Williams v. Enserch*, a Texas appellate court found that the tort of wrongful termination cannot be based upon an ordinary employee's refusal to commit an OSHA violation, because OSHA imposes criminal penalties only upon "an employer," who is defined as "a person engaged in a business affecting commerce who has employees." *Williams v. Enserch Corp.*, 05-97-02071-CV, 2000 WL 31802, at *2-3 (Tex. App. Jan. 18, 2000). In that case, because the

plaintiff "cited no authority establishing that he would be considered an employer under the Act" or otherwise "requiring him to report the environmental noncompliance issues," the plaintiff's wrongful termination claim could not be sustained under Texas law.  *Id.*; *see also Hawthorne v. Star Enter., Inc.*, 45 S.W.3d 757, 761 (Tex. App. 2001) (assuming, without deciding, that wrongful termination could be predicated upon a midlevel supervisor's refusal to permit "the employees under his direction" to commit an OSHA violation dangerous to their health).

Here, Plaintiff states in support of this claim of wrongful termination that he was asked to "participate in a scheme that was illegal" and that, relatedly, he had "reported safety violations" committed by his supervisors that were in violation of OSHA.  Pl.'s Pet. 3, 11.  As in *Williams*, however, it is not clear at this stage how Plaintiff could have violated OSHA or how OSHA could have imposed any criminal penalties on Plaintiff, such that the tort of wrongful termination could arise from Plaintiff's refusal to violate OSHA.  *See Williams*, 2000 WL 31802, at *2-3. Therefore, the Court in its discretion grants Defendant's request for a more definite statement. *See Mitchell*, 269 F.2d at 130; *Travelers Indem. Co. of Conn.*, 313 F. Supp. 2d at 653-54.  In the Court's view, Plaintiff's allegations regarding his refusal to commit an illegal act, where the illegal act in question was allegedly prohibited under OSHA, is sufficiently "conclusory, confused, and unclear," to justify clarification under Rule 12(e).  *See Cates*, 756 F.2d at 1180.

### d.  Negligent hiring

Finally, Defendant also challenges the sufficiency of the allegations supporting Plaintiff's claims for negligent hiring.  Def.'s Mot. 8-9.  As to this cause of action, Defendant raises only one argument—that an employer cannot be held liable for negligent hiring of an employee unless the employee committed an actionable, common-law tort.  *Id.*

Indeed, Texas law does not impose liability on an employer for the negligent hiring or

supervising of its employee unless the employee committed an actionable tort.  *See Schmieding v. Mission Petroleum Carriers, Inc.,* 07-11-0151-CV, 2012 WL 4092716 (Tex. App. Sept. 18, 2012); *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 455 (S.D. Tex. 2010); *Staples v. Caremark, LLC*, No. Civ. A. SA-08-CV-831-XR, 2009 WL 3634079, *5-6 (W.D. Tex. Oct. 29, 2009); *Udoewa v. Plus4 Credit Union*, No. H-08-3054, 2009 WL 1856055 (S.D. Tex. June 29, 2009); *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App. 2005); *Garcia v. Allen*, 28 S.W.3d 587, 593 (Tex. App. 2000).

Because of the Court's rulings above, Plaintiff's common-law claims have either been dismissed or found to require a more definite statement.  Therefore, Plaintiff has not sufficiently alleged the existence of a common-law tort upon which the tort of negligent hiring could be predicated.  The Court has not ruled out the possibility, however, that one of Plaintiff's remaining common-law claims for intrusion upon seclusion, IIED, or wrongful termination may be sustained in this case based upon a more definite statement of Plaintiff's claims.  The Court will also permit Plaintiff to re-plead his claim of negligent hiring.

## III.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF No. 2, is **GRANTED** in part and **DENIED** in part, as follows.

**IT IS ORDERED** that Defendant's Motion is **DENIED** as to Plaintiff's statutory claims of discrimination and retaliation under the ADA, the TCHRA, and the Anti-Retaliation Law.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **GRANTED** with respect to Plaintiff's claims of negligence, gross negligence, and negligent investigation.

**IT IS FURTHER ORDERED** that Defendant's request for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure is **GRANTED** with respect to

Plaintiff's claims of intrusion upon seclusion, IIED, wrongful termination, and negligent hiring.

**SO ORDERED**.

SIGNED this 27th day of August, 2013.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE